Tbe defendent, in an action on tbe case against the plaintiff for slander, commenced in Hanover county court, to the declaration in which the plea was not guilty, had recovered 150 pounds damages.
The county court granted an injunction to stay execution of the judgement until further order, upon a hill filed by the present plaintiff,stating tbat tbe trial of the issue had been brought unexpectedly and as he conceived irregularly, and when for that reason be was not prepared to make a defence,tbat not only tbe damages were excessive, if the words alleged to be defamatory had not been true, but, tbat the truth of them would have been proved, if the plaintiff had not been surprised by a premature trial, and tbat some of the jurors, who were disposed to condemn tbe plaintiff in trifling if in any damages, being convinced by the reasoning of their more experienced, and as they believed at that time more knowing, brethren, who affirmed that the less number were bound by law to acknowledge their agreement in a verdict, however discordant with their own sentiments, which the greater number had approved, concured in the sentence of which the plaintiff complainetb, and to which they would not otherwise have assented.
The defendent by answer denied the trial to have been brought on irregularly, and neither admitting nor denying tbe allegation relative to the influence of some jurors over others, objected that tbe examination of them, in order to prove their own misconduct, would be a mischievous practice.
No irregularity in bringing on tbe trial of the issue was made to appear.
Several witnesses were examined to prove, on one side, tbe truth, and, on the other, the falsehood, of tbe words alledged to be defamatory.
As to tbe influence of some jurors over others, one juror de *134 posed, that, from the evidence, be was of the opinion no damages ought to have been found against the plaintiff, but being unacquainted with the law concerning juries, he was imposed upon by some of his brethren, who told him that all the jurors must acknowledge their agreement in any verdict in which a majority were agreed ; and under this imposition he did acknowledge his agreement in the verdict then found ; whereas had he known that bis own conscience ought to be satisfied in the propriety of the verdict, be would not have consented to a verdict for any damages against the plaintiff.
Another juror deposed to the same purpose with respect to himself, and indeed in the same’words, adding that he desired the foreman, whilst he was writing the verdict, to consider him the deponent as dissenting from it.
A third juror deposed to the same purpose as the first, adding that he desired the foreman to write that the majority but not the whole were for a verdict in favour of the plaintiff.
And a fourth juror also deposed to the same purpose as the first.
Not one of then!, when the verdict was returned, and the usual question ‘ have you agreed in a verdict ?’ was propounded, signified his dissent.
Four other jurors, who were examined, acknowledging the diversity of opinions among them, at first, insomuch that some would have found 50Ü pounds damages, others less damages, and others no damages at all, do not admit or believe any means to have been practised by any of the jury for the purpose of misleading others, and state their own opinions respectively to be that, after some time the majority appearing inclined to find 150 pounds, all of them agreed to the verdict returned for those damages.
The county court decreed another trial of the issue between tbe parties.
From this decree the defendant appealed to the high court of chancery, who, the 28 day of October, 1791, delivered this
OPINION:
That, if the damages found on trial of the issue in the action at common law, had been excessive, the application to obtain redress, for that cause, to the court of equity, in the first instance, was improper, unless, for some reason not apparent in this case, a motion to the court before whicli that trial was, to award another trial, either could not have been made, or if made *135 must have been unsuccessful ; (a) and that no other good cause for awarding the new trial in this case appeareth, the surprise upon the appellee (plaintiff) not being proven ; the truth of the slanderous words spoken by him of the other party being a proper subject of inquiry, upon a motion, which ought to have been made instead of a bill in equity, for awarding a new trial; and that some of the jurors should at length join in a verdict which they do not approve, prevailed upon by their fellows to do so, being in most cases unavoidable, and perhaps generally those verdicts being the most just, which are the re-suit of discussion introduced by diversity of sentiments professed by different jurors on thoir first consultations :
And, reversing the decree of the county court, dismissed the bill.
This decree was reversed the 16 day of may, 1792, by the court of appeals, whose opinion was, “ that the fact ‘ that the verdict in the suit at common law between the parties was founded in mistake of some of the jurors, ’ being well estáb-lished by the depositions was a good ground for a court of equity to decree another trial in the said suit.”
This last decree is acknowledged to be right if we may attend to four jurors, of whom, although three of them were more than 30 and the other 26 years of age, neither had before served in that office, and who having declared their disapprobation of the sentence in which they seemed to concur to have been so invincible that they would not have concured in it, if they had not been missled by some of their brethren into a belief that in questions refered to juries the opinion of a majority was decisive. But to permit part of a jury to retract a verdict recognized in solemn form is thought by some a dangerous precedent. *

 In some cases, where the damages were said to be excessive, two or three judges, who heard the evidence, would have approved motions for new trials ; but the others would give no opinion, because they were not present at the first trials: so that there were no courts whij would hear the motions, in other eases where verdicts have seemed exceptional for various reasons, prejudices against one of the parties have been so prevalent that from their influence even justices of the peace have not been free, motions for new trials to courts composed of such judges must be vain, in cases like these interposition of the court of equity may be justified

[See Ross v. Pleasants, Shore & Co., in this vo!. note p. 10, and in 1 Wash. 158. The doctrines as to whether and to what extent jurors should be permitted to testify by affidavit or in open court, against their verdicts, have been very recently a good deal discussed in the Federal Court, for this Circuit; in the Superior Court of Law for Henrico County and in the General Court—The questions are now pending in the Appellate Courts both of the ünion and this Commonwealth. In this State, they are involved in the ease of Nicholas 0. Thompson, found guilty in the *136 second degree of the murder of his wife.—His motion for a new trial, based, in a great measure, upon the testimony of tbe jurors themselves, was overruled by the Superior Court. The General Court not having time, at its last session, owing to the unavoidable delay in presenting his petition, to decide the questions arising thereon, awarded a writ of error, and will hear and determine them at their next term. Questions as to the separation of the jury, and their taking something to drink, though only in moderation, are also involved in the ease.—⅜½,]